**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| ROBERT B.,[1] | : | Case No. 3:25-cv-00143 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ORDER

Plaintiff's application for Supplemental Security Income[2] is before this Court for the second time.[3] Plaintiff appeals Defendant's finding that he is not disabled and seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court **REVERSES** the Commissioner's decision and **REMANDS** for further proceedings.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] Plaintiff initially filed applications for Disability Insurance Benefits and Supplemental Security Income in September 2020, and alleged disability beginning June 2, 2008. Plaintiff's claims were denied initially and upon reconsideration. At Plaintiff's first hearing with an ALJ, he amended his alleged onset date of disability to September 1, 2020. Plaintiff's earnings record showed that his date last insured for purposes of Disability Insurance Benefits was March 31, 2009, and so Plaintiff voluntarily elected to withdraw his request for a hearing as it related to his application for Disability Insurance Benefits. The unfavorable reconsideration determination for Plaintiff's Title II application therefore became final. Plaintiff does not appeal the dismissal of his Disability Insurance Benefits claim.

[3] Plaintiff's first case was assigned to District Judge Michael J. Newman, Case Number 3:22-cv-246.

## I. BACKGROUND

Plaintiff asserts that he has been under a disability since September 1, 2020. At that time, he was forty-six years old and was considered a "younger person."[4] 20 C.F.R. § 416.963(c). He subsequently changed age categories to a person "closely approaching advanced age." 20 C.F.R. § 416.963(d). Plaintiff has a "limited education." 20 C.F.R. § 416.964(b)(3).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-10 at PageID 1803-36), Plaintiff's Statement of Errors ("SE," Doc. No. 8), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 10), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II. STANDARD OF REVIEW

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can

---

[4] The ALJ stated that Plaintiff was thirty-four years old on the alleged disability onset date. (Decision, Doc. No. 7-10 at PageID 1825.) However, Plaintiff was thirty-four years old on June 2, 2008, the date that he initially alleged that his disability began. Plaintiff was forty-six years old on the amended alleged disability onset date of September 1, 2020.

be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.905(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 416.920. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since September 1, 2020, the amended alleged onset date.

Step 2: He has the severe impairments of essential hypertension, diabetes mellitus, obstructive sleep apnea, gastrointestinal disorder, peripheral neuropathy, gout, varicose veins, osteoarthritis, lumbar and cervical degenerative disc disease, obesity, depression, bipolar

disorder, posttraumatic stress disorder (PTSD), and borderline intellectual functioning.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 416.967(b), subject to the following limitations: "(1) standing and/or walking for about 4 hours in an 8-hour workday; (2) frequently balancing; (3) occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; (4) never climbing ladders, ropes, or scaffolds; (5) occasionally reaching overhead with the right upper extremity; (6) occasional concentrated exposure to dust, odors, fumes and pulmonary irritants; (7) avoid unprotected heights and dangerous machinery; (8) can perform simple routine tasks; (9) not at a production rate pace and without strict performance quotas; (10) occasional superficial contact with coworkers and supervisors ("superficial contact" is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice); (11) no interaction with the general public; (12) no jobs involving teamwork or tandem tasks; and (13) occasional changes to a routine work setting defined as 1-2 per week where those changes are explained in advance."

He has no past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform.

(Decision, Doc. No. 7-10 at PageID 1810-26.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability. (*Id.* at PageID 1826.)

### B. Plaintiff's Mental Impairments

The ALJ found that Plaintiff's severe mental impairments include depression, bipolar disorder, posttraumatic stress disorder (PTSD) and borderline intellectual functioning. (Decision, Doc. No. 7-10 at PageID 1810.) Elsewhere, the ALJ noted formal diagnoses of paranoid schizophrenia and major depressive disorder. (*Id.* at PageID 1813.) The ALJ summarized Plaintiff's mental health complaints as follows:

> He has some borderline intellectual deficits (Exhibit 6F at 11) due to a reported learning disability in reading, spelling, and math (Exhibit 1F at 227 / 3F at 2) and complains of short- and long-term memory problems (Exhibit 13F at 13) with depressed-type bipolar and PTSD-based symptoms from difficult life events (Exhibit 8F at 13) including panic attacks (Exhibit 14F at 13), social anxiety (Exhibit 18F at 16), trouble concentrating, poor sleep, low mood (Exhibit 19F at 45), isolative behaviors, and a history of suicidal ideation and attempts (Exhibits 8F at 21 / 14F at 33 / 17F at 34, 36 / 18F at 16).

(*Id.* at PageID 1812.) The ALJ also acknowledged Plaintiff's testimony that he has "suffered from attention deficit hyperactivity disorder (ADHD) since childhood" and "relies on his girlfriend for help with cooking and reading because of his difficulty with comprehension." (*Id.* at PageID 1810.)

The ALJ acknowledged that Plaintiff "has had several barriers to treatment due to insurance coverage, facility closure, and provider retirement." (Decision, Doc. No. 7-10 at PageID 1809.) For example, Plaintiff's "counseling/psychotherapy has been disrupted, at least in part, by the closure of his mental health facility and insurance issues." (*Id.* at PageID 1812.) Further, "[l]ack of transportation has hindered the process of finding a new psychiatrist for worsening depression with suicidal ideation, paranoia and social anxiety in large crowds." (*Id.* at PageID 1810.) Nevertheless, the ALJ noted that "there

still are comparatively few corresponding records since the amended alleged onset date of September 1, 2020 beyond medication refills managed by his primary care provider." (*Id.* at PageID 1812.)

The ALJ discussed the examination conducted by outside psychological consultant Brian Griffiths, Psy.D. on February 4, 2023. (Decision, Doc. No. 7-10 at PageID 1813-14.) In his report, Dr. Griffiths diagnosed Plaintiff with Unspecified Bipolar and Related Disorder with psychotic features, PTSD and Borderline Intellectual Functioning. (AR, Doc. No. 7-16 at PageID 2664.) Dr. Griffiths also stated that Plaintiff "may meet criteria for Intellectual Disability-Mild, Schizoaffective Disorder or Bipolar I Disorder." (*Id.*) Dr. Griffiths offered the following assessments of Plaintiff's abilities and limitations:

> Although [Plaintiff] impressed the examiner as a low-functioning individual, he understood and followed simple instructions during the evaluation. However, he performed marginally on Digit Span, a simple structured task designed to assess his short-term memory skills.
>
> ****
>
> [Plaintiff] was unable to perform serial sevens, a simple structured task designed to assess his attention and concentration skills. He obtained a WAIS-IV WMI score falling at about the 4th percentile for his age group. [Plaintiff's] remarks suggested that he has difficulty mentally focusing if he is not interested in the subject matter.
>
> As far as his pace, [Plaintiff] seemed to be sedated. He nodded off during psychological testing. He obtained a WAIS-IV PSI score falling at about the 1st percentile for his age group. [Plaintiff] reported that his energy level is low. He stated that he gets easily fatigued. [Plaintiff] described himself as an emotionally labile individual.... He alluded to perceptual disturbances.... Intellectual limitations and/or mood extremes such as depression and/or trauma symptoms like intrusive thoughts, flashbacks and hypervigilance and/or auditory hallucinations may interfere with [Plaintiff's] ability to keep up with others.
>
> ****

> [Plaintiff's] description of his employment history suggested that emotional problems previously interfered with his occupational functioning. For example, he stated that he got terminated from his job as a door greeter because he assaulted a customer.... [Plaintiff's] remarks suggested that stressful situations exacerbate PTSD-related symptoms … [and] cause mood extremes such as depressive or manic episodes accompanied by florid psychotic features such as auditory hallucinations.... When he is overwhelmed and/or provoked, he probably responds impulsively through emotional rather than cognitive channels.

(*Id.* at PageID 2664-65.) The ALJ found Dr. Griffith's opinion evidence to be only "somewhat persuasive" because Plaintiff "was able to relate appropriately during the evaluation while maintaining full contact with reality and has not been psychiatrically hospitalized since adolescence and his efforts at dedicated mental health treatment have been limited to medication refills." (Decision, Doc. No. 7-10 at PageID 1814.)

The ALJ concluded that although Plaintiff's mental impairments could reasonably be expected to cause his symptoms, the "extent … alleged is largely unsubstantiated by convincing objective medical evidence or clinical findings." (Decision, Doc. No. 7-2 at PageID 1824.) The ALJ explained:

> As for his psychological functioning, [Plaintiff] plainly suffers from mental health disorders. Nonetheless, the record lacks evidence of dedicated mental health treatment in over a decade since approximately 2009 … which tends to undercut allegations as to the severity of [Plaintiff's] psychological symptoms. Though he complains of difficulty interacting with others, he is able to control his temper and conform his conduct to socially acceptable standards when he chooses to do so as evidenced by objective descriptions of normal mood and affect and appropriate behavior. [Plaintiff] does also have some concentration lapses and deficits in intellectual functioning and stress tolerance but these too have been fully accommodated by the mental limitations as discussed herein.

(*Id.*) The ALJ did not discuss the impact of the barriers to mental health treatment noted earlier in the Decision, such as closure of a mental health facility and lack of insurance.

## IV. LAW AND ANALYSIS

### A. Plaintiff's Assignments Of Error

Plaintiff asserts two assignments of error. (SE, Doc. No. 8 at PageID 3166.) First, Plaintiff contends that the ALJ "reversibly erred in evaluating [Plaintiff's] mental health symptom severity pursuant to SSR 16-3p." (*Id.* at PageID 3170-73.) Second, Plaintiff asserts that "the ALJ reversibly erred by requiring Plaintiff to meet the standard in SSR 96-9 and by failing to include the use of any ambulatory aid whatsoever in his RFC determination." (*Id.* at PageID 3174-78.) Finding error in the ALJ's analysis of Plaintiff's symptom severity, the Court does not address Plaintiff's other alleged error and instead instructs the ALJ to address both of them on remand.

### B. Applicable Legal Framework

The ALJ was required to comply with the applicable Social Security regulation when evaluating Plaintiff's symptoms. 20 C.F.R. § 416.929. In addition, because Plaintiff alleged symptoms of disabling severity, the ALJ was required to use a two-step process for evaluating those symptoms. SSR 16-3p, 2017 WL 5180304, *3 (S.S.A. revised and republished Oct. 25, 2017).[5]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must base this determination upon objective medical evidence in the form of medical signs or laboratory findings. *Id.*

[5] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id.* The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id.*

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id.* The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 416.929(c)(3). The ALJ need only discuss the factors that are pertinent based upon the evidence in the record. *Id.* However, the ALJ's discussion "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. *See Bywater v. Comm'r of Soc. Sec.*, No. 5:25-cv-2170, 2026 WL 2106606, 2026 U.S. Dist. LEXIS 162140, at *37 (N.D. Ohio July 22, 2026) ("The ALJ's explanation of that [symptom severity] assessment must be specific enough to permit the court to 'trace the path' of the ALJ's reasoning.") (quoting *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

As part of this analysis, the ALJ is required to determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example, the ALJ will consider whether an individual's statements are consistent with her symptoms, keeping in mind that the statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id.* at *8-9.

The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id.* However, the ALJ "will not find an individual's symptoms inconsistent ... on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

Further, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p at *9. However, an ALJ "will not find an individual's symptoms inconsistent [] on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* The SSR explains, for example, that individuals may not seek or follow treatment due to side effects from medications, an inability to afford treatment, or an inability to understand the need for treatment due to a mental impairment. *Id.* at *9-10. The ALJ may need to contact the claimant—or to question the claimant at the administrative hearing—to ascertain the reason(s) for the lack of treatment. *Id.* at *9. The ALJ "***will*** explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added).

### C. The ALJ Erred When Evaluating Plaintiff's Symptom Severity.

The ALJ explained that he discounted the severity of Plaintiff's mental health symptoms because "the record lacks evidence of dedicated mental health treatment in over a decade since approximately 2009 … which tends to undercut allegations as to the severity of [Plaintiff's] psychological symptoms." (Decision, Doc. No. 7-10 at PageID 1824.) The ALJ apparently did not, however, consider the evidence in the record that suggests reasons for this lack of treatment. Because the ALJ was required to explain how he considered such reasons before relying on a lack of treatment to discount the severity of Plaintiff's symptoms, remand is required.

The relevant requirement is set forth in Social Security Ruling 16-3p:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. ***We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.*** We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. . . . ***We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.***

SSR 16-3p, 2017 WL 5180304, *9-10 (revised and republished Oct. 25, 2017) (emphasis added). Thus, an ALJ must consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of*

*Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). The inability to afford treatment and to access free or low-cost medical services are among the reasons that an ALJ should consider when evaluating a lack of treatment. SSR 16-3p at *10.

The ALJ did not comply with SSR 16-3p because he did not consider whether transportation, access and insurance barriers prevented Plaintiff from seeking treatment consistent with the degree of his complaints. For example, Plaintiff testified at the September 2021 hearing that he was currently looking for a therapist. (AR, Doc. No. 7-2 at PageID 88.) According to Plaintiff: "Most of the places that they give me [are] outside of Dayton, Ohio, which I don't have a car to take myself to ...." (*Id.*) Plaintiff tried to go to Day-Mont West for mental health treatment, but "every time I find a psychiatrist that makes me feel comfortable, they either find another job or quit." (AR, Doc. No. 7-2 at PageID 90.) Plaintiff also stated that Day-Mont West had recently closed. (*Id.*) He later stated that he was looking for a new therapist but "most of the ones that they give me [are] outside of Dayton, Ohio and I don't have transportation to go that far out." (*Id.*) Plaintiff said that he had a driver's license but did not have a car. (*Id.* at PageID 78.) He said he usually relied on his children to drive him when he needed to go somewhere. (*Id.* at PageID 87-88.) Plaintiff told his primary care provider in June 2022 that he had "not been able to get in with a psychiatrist for depression because of his insurance." (AR, Doc. No. 7-16 at PageID 2749.) In May 2023, Plaintiff told his provider that he had been "calling his insurance for help getting in with a psychiatrist." (*Id.* at PageID 2711.) During the February 2024 hearing, Plaintiff said that he relied on his girlfriend to take him to medical appointments. (AR, Doc. No. 7-10 at PageID 1848.)

The ALJ did acknowledge some of this evidence. For example, the ALJ noted that "the closure of [Plaintiff's] mental health facility and insurance issues" had "disrupted" Plaintiff's counseling and psychotherapy. (Decision, Doc. No. 7-10 at PageID 1812.) The ALJ also noted Plaintiff's testimony that "[l]ack of transportation has hindered the process of finding a new psychiatrist for worsening depression with suicidal ideation, paranoia and social anxiety in large crowds." (*Id.* at PageID 1810.) However, the ALJ did not explain why these proffered reasons for the lack of treatment were unpersuasive (if they were) when he discounted Plaintiff's symptom severity.

Defendant argues that the ALJ complied with the requirement to "consider possible reasons" for Plaintiff's limited treatment history because the ALJ cited Plaintiff's testimony about his lack of transportation and acknowledged that Plaintiff's treatment was "disrupted, at least in part, by the closure of his mental health facility and insurance issues." (Mem. In Opp., Doc. No. 10 at PageID 3189 (citing Decision, Doc. No. 7-10 at PageID 1810, 1812.)) But merely reciting reasons for a lack of treatment is not equivalent to finding that a claimant's symptoms are less severe than alleged due to a lack of treatment ***despite*** those reasons. Here, when the ALJ concluded that Plaintiff's symptoms were not as severe as alleged, he did not demonstrate that he had considered any of Plaintiff's reasons for not seeking the expected level of mental health treatment. (*Id.* at PageID 1824.) The ALJ's analysis therefore did not comply with SSR 16-3p.

Defendant cites two cases from the Sixth Circuit Court of Appeals to support its position, but both are distinguishable. (*Id.* (citing *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 599 (6th Cir. 2018); *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 120

(6th Cir. 2016).) *Kestel* is distinguishable because in that case, unlike here, there was "no evidence that explains [the plaintiff's] lack of treatment for over two years." 756 F. App'x at 599. *Dooley* is distinguishable because the plaintiff in that case was able to obtain primary care services at a low-cost clinic and "the record does not indicate that he ever sought mental health treatment from no-cost to low-cost providers within his community." 656 F. App'x at 120. Here, by contrast, Plaintiff explained that his mental health facility had closed and he lacked transportation to visit facilities outside of the Dayton area. Thus, neither case supports the ALJ's analysis and conclusions in this case.

For all of these reasons, the Court concludes that the ALJ did not comply with the applicable regulatory framework when he evaluated Plaintiff's symptom severity. This error of law requires reversal.

### D. The ALJ's error was not harmless.

The ALJ's errors can only be excused as harmless if they do not prejudice the claimant on the merits or deprive him of substantial rights. *Rabbers*, 582 F.3d at 654. The Court finds that the ALJ's errors were not harmless because they prejudiced Plaintiff on the merits. *See Deanna S. v. Comm'r of Soc. Sec.*, No. 1:22-cv-602, 2023 U.S. Dist. LEXIS 172825, at *12-13 (S.D. Ohio Sept. 27, 2023). Therefore, reversal is required.

## V. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate

award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to Plaintiff's subjective complaints and treatment history, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 8) is GRANTED;
2. The Court REVERSES the Commissioner's non-disability determination;
3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;
4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge